UNITED STATES DISTRICT COURT
<u>NORTHERN DISTRICT OF NEW YORK</u>

ASHRAF ABDELAZIZ ABDELREHIM,

         Petitioner,

 -against-             9:20-CV-0046 (LEK/TWD)

UNITED STATES OF AMERICA, *et al.*,

         Respondents.

## DECISION AND ORDER

**I. INTRODUCTION**

Petitioner Ashraf Abdelrehim seeks federal habeas corpus relief pursuant to 28 U.S.C. § 2241. Dkt. No. 1 ("Petition"). Petitioner also remitted the statutory filing fee along with his Petition. Id. (indicating receipt information for filing fee transaction).

Upon Petitioner's extradition to Romania, The United States moved to dismiss the Petition as moot and, in the alternative, argued that Petitioner's claims were meritless. Dkt. Nos. 8 ("Motion"), 8-1 ("Respondent's Memorandum"), 8-2 to -4 ("Exhibits"). Petitioner was served with the moving papers and provided an opportunity to respond. See Dkt. Nos. 11, 12. He has not filed a response.

For the reasons discussed below, the Petition is denied and dismissed.

**II. BACKGROUND**

Petitioner is an American citizen who, "[o]n or about November 20, 2012, . . . was convicted, *in absentia*, by a Romanian Court, of the crimes of (1) Aggravated Fraud, Ongoing Offense, in violation of the Romania Criminal Code §§ 215(1) (2) (3) & (4), and 41(2); and (2) Forgery of Deeds Under Private Signature, in violation of Criminal Code § 290(1)." Dkt. No. 8-

3 at 1.¹ The convictions arose out of Petitioner's sale—to at least two people—of the same Maserati vehicle. Id. at 14–18. Petitioner was sentenced to three years' and two months' imprisonment, respectively, to run concurrently. Id. at 1.

After Petitioner was convicted, the Romanian Government made a formal request to extradite Petitioner, pursuant to a treaty with the United States, so that he could begin serving his criminal sentence. Mot. Ex. B at 1. On September 30, 2019, Petitioner was located and arrested in Schenectady. Id. at 2. On October 11, 2019, an extradition hearing occurred before the Honorable Daniel J. Stewart, United States Magistrate Judge for the Northern District of New York. Id. at 2–5; see also United States v. Abdelrahim, No. 19-MJ-580, Dkt. No. 21.

On November 22, 2019, this Court issued its decision certifying Petitioner's extradition to Romania. Mot. Ex. B.² Specifically, the Court found that there was a valid extradition treaty between the two countries, signed in Bucharest on September 27, 2007, and approved by the United States Senate on September 23, 2008. Id. at 8–9. Moreover, the crimes charged were covered by the treaty. Id. at 9–11. Additionally, the person sought to be extradited was the same individual as the person being detained, as confirmed by Petitioner's passport and photograph, as well as by the criminal court decision in the underlying case and supporting affidavits identifying him as the individual who was the subject of the criminal investigation. Id. at 11–12. Finally, the Court found that there was probable cause to believe that Petitioner committed the crimes for which he was tried and convicted. Id. at 12–22.

---

¹ Citations to the filings in this case refer to the pagination generated by CM/ECF, the Court's electronic filing system.

² A copy of the decision was also attached to the Petition. See Pet. at 13–35.

Following this Court's certification, the United States Secretary of State decided whether to surrender the fugitive to the requesting state. Mot. Ex. C at 1. Here, the Secretary ultimately decided to surrender Petitioner to Romania. Mot. Ex. A. However, prior to that decision, Petitioner was provided with a letter on December 2, 2019 notifying him that the Secretary would render a final extradition decision within fourteen days of the date of the letter, and that extradition would be suspended if Petitioner filed a habeas corpus petition within that fourteen-day period. Id. at 2. In the event Petitioner did not file a petition within the fourteen days, he could only remain in the United States if he sought and obtained a court-ordered stay. Id. at 2–3. Without said stay, even if a petition was filed, "the fugitive may be surrendered to the foreign authority at any time." Id. at 3.

Petitioner neither filed his § 2241 petition within that fourteen days nor sought a court-ordered stay. Instead, Petitioner filed the instant petition on or about January 13, 2020, when the extradition process was nearly complete. Docket; Resp. Mem. at 1 (noting that Petitioner was extradited on January 23, 2020).

### III. PETITION

Petitioner challenges his detention in Rensselaer County Jail. Pet. at 1, 3; see also id. at 13–35 (court order certifying extradition).[3] Petitioner seeks immediate release so that he may appeal, and subsequently resolve, his case with Romania, on the grounds that (1) there was no reason for him to be tried *in absentia* because, had Romanian officials attempted to locate

---

[3] "Because extradition orders are regarded as preliminary determinations, and not final decisions appealable as of right under 28 U.S.C. § 1291, they may only be reviewed by a petition for a writ of habeas corpus under 28 U.S.C. §2241." Skaftouros v. United States, 667 F.3d 144, 157 (2d Cir. 2011) (internal quotation marks and citations omitted).

petitioner, they would have found that he was, and had been, in the United States for months before he was criminally charged; (2) the witnesses are not credible; and (3) there is no proven financial gain from the crimes of conviction. Pet. at 7–8, 10–12.

Respondent moves for dismissal of the Petition, arguing that Petitioner's claims have been rendered moot by his extradition. Resp. Mem. at 3–4, 5–6. In the alternative, Respondent also contends that Petitioner's claims are meritless because Petitioner has failed to demonstrate that the Court's extradition decision was in violation of the Constitution or laws and treaties of the United States. Id. at 6–7.

## IV.   DISCUSSION

### A.  Mootness

"Article III, Section 2 of the United States Constitution limits the subject matter of the federal courts to those cases which present a 'case or controversy.'" Islam v. New York State Bd. of Parole, No. 13-CV-854, 2016 WL 3943668, at *2 (N.D.N.Y. June 2, 2016) (citing Spencer v. Kemna, 523 U.S. 1, 7 (1998)). Accordingly, "in order for there to be a valid exercise of subject matter jurisdiction, a federal court must have before it an actual controversy at all stages of review, not simply at the time it is filed." In re Flanagan, 503 F.3d 171, 178 (2d Cir. 2007). "The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed." Martin-Trigona v. Shiff, 702 F.2d 380, 386 (2d Cir. 1983).

The Second Circuit and lower courts in the Circuit have held that a habeas case "can be rendered moot as a result of deportation." See Karamoke v. United States Homeland Sec., No. 09-CV-4089, 2009 WL 2575886, at *3 (S.D.N.Y. Aug. 20, 2009) (collecting cases). Specifically, where a petitioner "sought only release from custody [and] . . . does not have any

4

challenges to the deportation order pending in any court . . . [the] habeas petition bec[o]me[s] moot upon . . . deportation from the United States, which terminated [petitioner's] detention in custody [of the original respondent]." Alhawwarin v. United States Dept. of Homeland Sec., No. 08-CV-6247, 2009 WL 229964, at *3 (W.D.N.Y. Jan. 29, 2009).

Here, Petitioner seeks release from custody in the Rensselaer County Jail so that he can file the necessary appeal for his criminal case in Romania and return to his family. Pet. at 1, 8. But the object of the Petition has already been achieved, as Petitioner was released from Rensselaer County jail prior to being extradited back to Romania. Accordingly, no live controversy remains, and Petitioner's claim for relief is denied as moot.

### B. Merits

Even assuming extradition did not moot the Petition, it should be denied as meritless.

"The federal extradition statute empowers an extradition officer[, including a magistrate or district judge,] . . . to hear and consider evidence of a fugitive's criminality[.]" Skaftouros v. United States, 667 F.3d 144, 154 (2d Cir. 2011). "If the extradition officer determines that the evidence is sufficient . . . he is instructed to issue a certificate of extraditability to the Secretary of State, who has final and discretionary authority to extradite the fugitive." Id.

> The scope of habeas corpus review of a magistrate's order of extradition is quite narrow. It is limited to a determination of whether the magistrate had jurisdiction, whether the offense charged is within the treaty and whether there was any evidence warranting the finding that there was reasonable ground to believe the accused guilty.

Murphy v. United States, No. 98-CV-1058, 1998 WL 1179110, at *2 (N.D.N.Y. Dec. 2, 1998); see also Skaftouros, 667 F.3d at 154–55 (explaining the limited scope of the extradition hearing and the three matters to which the judicial officer's inquiry is limited).

Importantly, this hearing is not a substitute for the actual criminal trial nor an opportunity to adjudicate guilt or innocence. Skaftourous, 667 F.3d at 155; see also In re Extradition of Medina Rodriguez, No. 08-MJ-770, 2009 WL 393638, at *5 (E.D.N.Y. Feb. 13, 2009) ("It is well established that extradition hearings do not inquire into the ultimate guilt or innocence of the fugitive, but rather determine whether the foreign country has presented sufficient competent legal evidence to support a finding of probable cause to believe that the fugitive is guilty.") (internal quotation marks omitted) (collecting cases). Further, "[t]he habeas petition is not a writ of error or way of rehearing what the magistrate judge has previously decided." Murphy, 1998 WL 1179110, at *2. Ultimately, the final determination on whether to extradite remains for the executive branch, specifically the Secretary of State, to decide. Id., 1998 WL 1179110, at *2, *4.

Petitioner contends that (1) Romanian officials easily could have found Petitioner, so he should not have been tried *in absentia*; (2) the witnesses during his criminal trial were not credible; and (3) he did not receive any financial gain from the crimes of conviction. See Pet. None of these are appropriate grounds for challenging an extradition determination; however, liberally construing the documentation attached to the Petition—namely, the extradition decision—the Court finds that Petitioner means to re-allege and re-incorporate his arguments therefrom. Pet. at 30–35.

Petitioner's counsel contended that this Court could not find probable cause of criminal activity, because, as the Court summarized the argument, the events constituted a mere "business transaction that went bad," as opposed to a fraudulent scheme. Pet. at 30. To the extent Petitioner's present argument regarding the credibility of the testifying witnesses could

be considered a subset of this argument, see id., such a contention is unavailing. This is because "[t]he credibility of witnesses and the weight to be accorded to their testimony is solely within the province of the extraditing magistrate." Murphy, 1998 WL 1179110, at *3. If it is clear from the extradition order that the magistrate judge made such determinations, then "[h]abeas review . . . is simply not the time to undertake a review of such a determination." Id.

Here, there is no question that the Court fully evaluated the evidence submitted in support of the extradition request, while also considering the opposing arguments, and ultimately concluded that probable cause existed. The Court found as follows:

> [T]he *facts* upon which counsel's assertions are based are found nowhere in the record. [Petitioner] never testified at the hearing, and therefore any assertion with regard to his good faith, or lack of knowledge and business acumen, or his attacks on the credibility of the other witnesses, are simply not based on anything properly before the Court. Rather, the Court makes a probable cause decision based upon the facts presented to it. In that regard, the Court agrees with the prosecution's assessment concerning evidence of the [Petitioner]'s fraudulent intent.
>
> Much more has been presented to the Court than simply a failed business dealing. It is credibly alleged that [petitioner] misled a party concerning the actual ownership and title of the vehicle and attempted to take control of the vehicle in his own name despite the fact that he provided none of the funds to purchase it. Next, the evidence presented creates probable cause to believe that [Petitioner] attempted to permanently deprive the original purchaser of this purchase, by selling it to a third party and never disclosing to that third party the ownership interest of Mr. Hurubă of his Company. That act creates clear evidence of a fraudulent scheme. In addition, evidence was presented that [Petitioner] attempted to extort more money from the original purchaser and, unable to succeed in that scheme, used the car as collateral for a personal loan. These facts, taken together, establish probable cause to believe that [Petitioner] committed fraud on multiple individuals.

Pet. at 30–31 (emphasis in original). In sum, there is clearly competent evidence tending to

show probable cause; therefore, to the extent Petitioner's arguments can be construed as a challenge to his extradition hearing, such contentions are denied as meritless.

IV.     **CONCLUSION**

Accordingly, it is hereby:

**ORDERED** that the United States' motion to dismiss, Dkt. No. 8, is **GRANTED**; and it is further

**ORDERED** that the Petition, Dkt. No. 1, is **DENIED AND DISMISSED** in its entirety; and it is further

**ORDERED** that no Certificate of Appealability ("COA") shall issue because Petitioner failed to make a "substantial showing of the denial of a constitutional right" as 28 U.S.C. § 2253(c)(2) requires;[4] and it is further

**ORDERED** that the Clerk serve a copy of this Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:      September 17, 2020
            Albany, New York

*Lawrence E. Kahn*
U.S. District Judge

---

[4] Miller-El v. Cockrell, 537 U.S. 322, 336 (2003); see also Richardson v. Greene, 497 F.3d 212, 217 (2d Cir. 2007) (holding that if the court denies a habeas petition on procedural grounds, "the certificate of appealability must show that jurists of reason would find debatable two issues: (1) that the district court was correct in its procedural ruling, *and* (2) that the applicant has established a valid constitutional violation") (emphasis in original).